UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CUNG LE, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case Nos.  5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE** |
| LUIS JAVIER VASQUEZ, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | |
| BRANDON VERA, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | |

1
Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

| GABE RUEDIGER, et al., on behalf of themselves and all others similarly situated, |
|---|
| Plaintiffs, |
| v. |
| ZUFFA, LLC, d/b/a Ultimate Fighting Championship and UFC, |
| Defendant. |
| KYLE KINGSBURY, et al., on behalf of themselves and all others similarly situated, |
| Plaintiffs, |
| v. |
| ZUFFA, LLC, d/b/a Ultimate Fighting Championship and UFC, |
| Defendant. |

Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vasquez, Dennis Lloyd Hallman, Brandon Vera, Pablo Garza, Gabe Ruediger, Mac Danzig, Kyle Kingsbury and Darren Uyenoyama (collectively, "Plaintiffs") are professional athletes. Plaintiffs each compete in a style of fighting known as mixed martial arts ("MMA"), which according to them "is a unique blend of various martial arts disciplines," including boxing, Muay Thai, judo, wrestling, Brazilian jiu-jitsu, taekwondo and karate. MMA differs from other professional combat sports, such as boxing, because the rules of MMA allow for kicks, takedowns, chokeholds, joint-locks, or any strikes below the waist.

Defendant Zuffa, LLC ("Defendant") is a promoter of professional MMA bouts throughout the world. It does business in the United States as "Ultimate Fighting Championship," or UFC, and promotes live events in various venues across the country. It also promotes the broadcasts of those events through television, internet and pay-per-view ("PPV") mediums, and licenses, markets, sells and distributes MMA merchandise and other materials, including video games, action figures, gyms, and apparel.

2

Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

In five separate actions filed in this district,[1] Plaintiffs allege that Defendant, now the heavyweight of the industry, has violated Section 2 of the Sherman Act, 15 U.S.C. § 2, through an "overarching anticompetitive scheme" to maintain its monopoly power in the MMA promotional market and its monopsony[2] power in the MMA fighter services market. Pursuant to 28 U.S.C. § 1404(a), Defendant now seeks to knock these cases out of the Northern District of California and into its home venue, the Las Vegas Division of the United States District Court for the District of Nevada. Plaintiffs oppose the motions.

The court has carefully considered the parties' briefing as well as the arguments of counsel presented at the hearing on May 7, 2015. At the final bell, it is Defendants arguments that clinch this round because the relevant forum selection clause and the § 1404(a) convenience considerations both favor a Nevada forum. Accordingly, the Motions to Transfer will be granted for the reasons explained below.

## I.   BACKGROUND

Since the 1990s, professional MMA has become one of the most popular and fastest growing spectator sports in North America. But unlike other professional sports such as football, MMA fighters like Plaintiffs are not organized into teams or leagues. Instead, professional MMA fighters achieve individual "elite" status by successfully participating in events organized by promoters, where fighters under contract with the same promoter compete in bouts against each other. Fan interest in these events - and in turn the amount of money fans are willing to pay to

---

[1] Le, Quarry and Fitch are named as plaintiffs in case number 5:14-cv-05484-EJD, while Vasquez and Hallman are the plaintiffs in case number 5:14-cv-05591-EJD, Vera and Garza are the plaintiffs in case number 5:14-cv-05261-EJD, Ruediger and Danzig are the plaintiffs in case number 5:15-cv-00521-EJD, and Kingsbury and Uyenoyama are the plaintiffs in case number 5:15-cv-01324-EJD. Save for certain details particular to each plaintiff, the Complaints filed in each case are identical.

[2] A monopsony is conceptually similar to a monopoly. Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., 549 U.S. 312, 321 (2007). In fact, "a monopsony is to the buy side of the market what a monopoly is to the sell side and is sometimes colloquially called a 'buyer's monopoly.'" Id. at 320.

3

Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

view or support a particular event - depends on the "strength of the card," or the level of notoriety of the fighters involved in the event. Fighters who have reputations for winning bouts or who have otherwise become popular with the MMA fanbase can attract a wider audience.

UFC was founded in 1993. As part of its role as an MMA promoter, UFC arranges bouts in venues, such as SAP Center in San Jose, for which admission tickets are sold. In addition to these ticket sales, UFC receives additional revenue from the broadcast of its events on television, over the internet, on PPV, and on video-on-demand, as well as through sales of merchandise, event sponsorships, and the collection of MMA-related copyright and trademark royalties. UFC also issues championship titles to athletes that win title bouts, but follows no independent ranking criteria and has not established objective standards to determine which fighters qualify to participate in a title bout.

Plaintiffs, all of whom have achieved "elite" fighter status and have fought in a bout promoted by UFC, allege that Defendant has grown to dominate both the professional MMA promotional market and the MMA fighter services market. Plaintiff's attribute this dominance to what they term as several of Defendants' "anticompetitive, illicit, and exclusionary" business practices, including the acquisition or impairment of competing promoters and its "tight-fisted control" over the supply of professional MMA fighters through various contracts which limit an athlete's ability to work with other promoters or to enter into sponsorship agreements independent of those sanctioned by UFC. Put in more technical terms, Plaintiffs contend that Defendant exercises monopoly power over an "output market," or the promotional end of the MMA business, and monopsony power over an "input market," or the pool of available MMA professionals that can compete at the highest level of the sport.

Plaintiffs further believe that as a result of Defendant's business practices and market prevalence, competitors not simply acquired by Defendant are essentially relegated to "minor league" status because their access to top venues, sponsors, broadcast outlets, and elite fighters are restricted. They allege the lack of viable competition is damaging to the fighters themselves,

4

whose compensation is artificially suppressed below competitive levels. According to Plaintiffs, fighters receive approximately 10% to 17% of total UFC revenues generated from bouts - an amount far below that of other professional athletes - but have little choice than to accept Defendant's terms. Fighters who have defied Defendant were subjected to intimidation and retaliation.

These purported class actions were each filed in this district between December, 2014, and March, 2015. Plaintiffs seek to represent two classes of MMA fighters: (1) a "Bout Class" which consists of "all persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States" from December 16, 2010, forward; and (2) an "Identity Class," which consists of "[e]ach and every UFC Fighter whose Identity was expropriated or exploited by the UFC, including in UFC Licensed Merchandise and/or UFC Promotional Materials" in the United States from December 16, 2010, forward. Once the cases were related, Defendant filed the instant motions to transfer venue.

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented" if such a transfer is convenient to the parties and witnesses. Aside from convenience, a motion under § 1404(a) is also the proper vehicle to enforce a forum selection clause. Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct., 134 S.Ct. 568, 579 (2013) ("Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district.").

The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). To determine if a transfer is appropriate, the court first examines whether the action could have been brought in the district to which transfer is sought. See Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir.1985) ("In determining

5

Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

whether an action might have been brought in a district, the court looks to whether the action initially could have been commenced in that district." (internal quotation marks and citations omitted)). If the proposed district is a viable one, the court then goes through an "individualized, case-by-case consideration of convenience and fairness." Van Dusen, 376 U.S. at 622.

In addition to the convenience considerations specifically enumerated by § 1404(a), the Ninth Circuit has identified other fairness factors that should be weighed by the court when considering a transfer: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

"No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." Ctr. for Biological Diversity v. Kempthorne, No. 08-1339, 2008 U.S. Dist. LEXIS 84978, at *8, 2008 WL 4543043 (N.D. Cal. Oct. 10, 2008) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Sparling v. Hoffman Constr. Co., Inc., 864 F.2d 635, 639 (9th Cir. 1988)). A transfer may not be appropriate under § 1404(a) if it "would merely shift rather than eliminate the inconvenience." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir.1986). The party moving for transfer of a case bears the burden of demonstrating transfer is appropriate. See Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979)), opinion modified, 828 F.2d 1445 (9th Cir. 1987).

**III. DISCUSSION**

Defendant presents two arguments in support of transfer under § 1404(a). First, it contends that a forum selection clause contained in some of the Plaintiffs' contracts with

6

Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

1  Defendant require that cases such as these be brought in Nevada. Second, and apart from the
2  contractual venue provision, Defendant believes that a convenience analysis under § 1404(a)
3  compels a transfer.
4  Plaintiffs dispute both points. As to the forum selection clause, they argue their antitrust
5  claim falls outside its purview. As to the convenience analysis, they disagree that the relevant
6  factors weigh in favor of Las Vegas. But as will be explained below, both the forum selection
7  clause and the relevant convenience factors justify the transfer of these actions to Nevada.

### A.   Forum Selection Clause

This discussion of a forum selection clause must begin by recognizing the strong judicial policy favoring their enforcement. E. & J. Gallo Winery v. Andina Licores S.A., 446 F.3d 984, 992 (9th Cir. 2006) ("It is therefore clear that the Supreme Court has established a strong policy in favor of the enforcement of forum selection clauses."). Similar to an agreement to arbitrate,[3] the contractual designation of a particular forum for the resolution of disputes is presumptively valid and should be enforced. See Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004) ("[F]orum selection clauses are presumptively valid" unless the challenging party "'clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'" (citation omitted)); see also Atl. Marine, 134 S.Ct. at 581 ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."). To that end, a forum-selection clause should be "given controlling weight in all but the most exceptional cases." Stewart, 487 U.S. at 33 (Kennedy, J., concurring). "[T]he party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which . . . the clause is unenforceable." Doe 1 v. AOL LLC, 552 F.3d 1077, 1083 (9th Cir. 2009). "Only under extraordinary circumstances unrelated to the

---

[3] Indeed, "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974).

7

Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

convenience of the parties should a §1404(a) motion [to enforce a forum selection clause] be denied." Atl. Marine, 134 S.Ct. at 581.

The present dispute concerns the scope of a forum selection clause. Resolution of that particular issue requires interpretation of the clause's language under federal law (Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988) ("[B]ecause enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses.")), the goal of which is to ascertain whether or not the parties intended for the dispute to proceed in the non-designated forum. See 11 R. Lord, Williston on Contracts § 30:2 (4th ed. 2015) ("In the interpretation, and ultimately, in the construction of contracts as well, the avowed purpose and primary function of the court is to ascertain the intention of the parties."); see also Polar Shipping, Ltd. v. Oriental Shipping Corp., 680 F.2d 627, 632 (9th Cir. 1982) ("[T]he intent of the parties governs the extent to which the non-selected court may exercise its jurisdiction."). This is done by applying the general principles of contract interpretation. Idaho v. Shoshone-Bannock Tribes, 465 F.3d 1095, 1098 (9th Cir. 2006) ("We apply general principles of contract interpretation to construe a contract governed by federal law."). The clause is first read by attributing to each word its ordinary definition. See Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987). If the meaning of the clause is clear after doing so, then "the intent of the parties must be ascertained from the contract itself" rather than from anything extrinsic to the document. Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999).

At issue is a forum selection clause that appears in certain "Merchandise Rights Agreements," "Bout Agreements," and "Promotional and Ancillary Rights Agreements" signed by Le, Fitch, Garza, Vera, Kingsbury, Uyenoyama and Danzig. Under its terms, the signatories "expressly consent[ed] to the exclusive personal jurisdiction and venue in the state and federal courts located in Clark County, Nevada for any action brought by either party to interpret or enforce any provision" of the agreement. This language is unambiguous and, for that reason, its

8

Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

interpretation of the clause is a simple matter: the parties intended that all actions to enforce or interpret the provisions of any of the contracts bearing the clause be brought in Nevada.[4]

The question therefore becomes whether Plaintiffs' antitrust claim is one "to interpret or enforce" any provision of Defendants' agreements such that the cases should be transferred to the contractual venue. Superficially, the elements of a claim for violation of Section 2 of the Sherman Act do not raise issues of contract nor do they require the pleading of facts that sound in contract. See Cal. Computer Prods., Inc. v. Int'l Bus. Mach. Corp., 613 F.2d 727, 735 (9th Cir. 1979) ("There are three essential elements to a successful claim of § 2 monopolization: (a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal 'antitrust' injury."). This characteristic of the prima facie claim, however, makes little difference when it comes to whether or not a Section 2 claim is subject to a forum selection clause pled according to specific facts. See Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993) (holding, as to whether plaintiffs' claims for securities violations were subject to a contractual forum selection clause, that only "if the substance of their claims, stripped of their labels, does not fall within the scope of the clauses, the clauses cannot apply"); see also Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc., 949 F. Supp. 1427, 1433 (N.D. Cal. 1997) ("[T]he better view, and the one that is consistent with the Ninth Circuit approach adopted in Manetti-Farrow, is the one which upholds the forum selection clause where the claims alleged in

---

[4] The record shows the other named plaintiffs - Quarry, Vasquez, Hallman and Ruediger - agreed to an alternative forum selection clause designating only the Nevada state courts for any dispute "arising from or relating to" their contracts with Defendant. This distinction makes no difference under these circumstances. Although there are presently five separate cases, consolidation into one action is inevitable given the identity of claims and class definitions. Consequently, the non-signatory plaintiffs have subjected their cases to the applicable forum selection clause by choosing to join a collective action with other plaintiffs who are signatories since the language of the clause makes clear that it applies to *actions* to interpret or enforce the contracts, not just individual claims. See Manetti-Farrow, 858 F.2d at 514 n.5 ("'[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'"); see also McNair v. Monsanto Co., 279 F. Supp. 2d 1290, 1309-10 (M.D. Ga. 2003) ("[W]here the record shows that some of the Plaintiffs are not bound by the forum selection clause, the Court finds that those Plaintiffs are bound by their choice to bring suit in concert with others that are.").

9

Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

the complaint relate to the interpretation of the contract."); see also Nextrade, Inc. v. Hyosung (Am.), Inc., 122 Fed. Appx. 892, 894 (9th Cir. 2005). The substance of a claim is what matters, not its title.

Looking at the substance of the Section 2 claim asserted here, Plaintiffs allege Defendant has engaged in a comprehensive anticompetitive scheme composed of several related strategies directed at the relevant input and relevant output markets. One of those strategies is the use of exclusive dealing contracts with fighters, and Plaintiffs identify in the Complaints seven specific provisions of the UFC's standard contracts which they deem "restrictive" or anticompetitive. For each provision, rather than repeating the language verbtaim or attaching the contracts and then pleading by reference, they provide their own description of the provisions' terms as well as their own understanding of what those provisions mean.[5] For example, Plaintiffs interpret the "Exclusivity Clause" as "block[ing] actual or potential rival promotions from having access to Elite Professional MMA fighters under contract with the UFC for protracted periods of time" with "various termination and extension clauses that can be triggered at the UFC's sole discretion, thereby effectively extending the exclusivity provisions indefinitely." Similarly, Plaintiffs describe the "Ancillary Rights Clause" as "grant[ing] the UFC excusive and perpetual worldwide personality and Identity rights not only of the UFC fighter, but of 'all persons associated with' the athlete, in any medium . . . thus preventing MMA Fighters from financially benefitting from the reputations that they built during their MMA careers even after death" and "after the term of the contract." For its part, Defendant contests that the contracts constitute part of the alleged scheme. It also disagrees with Plaintiffs' characterization of the clauses, particularly the allegation that the contractual language truly prevents Plaintiffs from engaging in any conduct in perpetuity.

Under these circumstances - where the parties have differing opinions of the meaning of

---

[5] Plaintiffs' assessment of the contractual provisions is contained in paragraph 113 of each Complaint.

10

Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

contractual language directly challenged by Plaintiffs - and given what Plaintiffs must show to prove a Section 2 violation, the court that ultimately adjudicates this case will need to define the accused provisions according to Nevada law[6] so that the finder of fact can consider whether or not they actually constitute evidence of Defendant's "willful" acquisition or maintenance of monopoly power.  It cannot be left to the jury to decide which side's interpretation of the contract is the correct one because contract interpretation is an issue of law.  Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc., 124 Nev. 1102, 1115 (2008) (holding that, in Nevada, contract interpretation is an issue of law when the facts underlying the contract are not in dispute).  These cases, therefore, are actions "to interpret" contracts which indisputably contain a forum selection clause designating a venue other than this district for the resolution of disputes.

Plaintiffs make a series of arguments in an effort to escape this conclusion, all of which are rendered unpersuasive in light of the reasoning detailed above.  First, Plaintiffs contend the forum selection clause should only apply to claims sounding directly in contract.  They believe that only then can an action be considered one "to interpret or enforce" a provision of the agreement.  But as the court has explained, limiting the effect of a forum selection clause in that way would place too much emphasis on the title or form of a claim rather than on its actual substance.  Moreover, the adoption of such a restrictive and mechanical interpretation of the clause is inconsistent with the strong judicial preference to enforce a contractual venue.

Second, Plaintiffs assert there will be no need to interpret the challenged contractual provisions because only the effect of those provisions is relevant to a Section 2 claim.  In fact, Plaintiffs specify in the Complaints these actions are not brought to directly enforce any of the rights or provisions of a particular UFC contract. [7]  But this disclaimer aside, Plaintiffs'

---

[6] Another provision of the contracts states they were "delivered at and shall be deemed to have been made at Las Vegas, Nevada" and designates the agreements "shall be interpreted . . . in accordance with the laws of the State of Nevada."

[7] Plaintiffs clarify in paragraph 115 of the Complaints that they are not, as individuals, claiming "that his or her contract, standing alone, violates the antitrust laws."  Instead, "Plaintiffs allege

11

Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

proposition of an "effects only" analysis cannot be sustained.  Indeed, to accept it is to prematurely assume the truth of two sets of allegations: first, that Plaintiffs have accurately described the content and meaning of the contracts in the Complaints, and second, that those contracts do, in fact, constitute part of Defendant's alleged anticompetitive scheme.  This cannot be done because both sets of allegations are in dispute.  Thus, before reaching the effects of Defendant's conduct, Plaintiff must initially show the contractual provisions actually contribute to those effects by proving they actually mean what Plaintiffs allege them to mean.

Third, Plaintiffs point out that the forum selection clause does not contain words and phrases, such as "arising in connection," "involving," or "related to," all of which have been traditionally interpreted to have a broad scope and to encompass many types of claims.  In general, the court agrees that the scope of the clause in Plaintiffs' contracts is narrower without such language.  Nevertheless, it makes no difference whether the clause is determined to be broad or narrow because these actions fall squarely within it.

Because Plaintiffs have placed at issue the interpretation of certain provisions of their contracts with Defendants, these antitrust actions are subject to the forum selection clause and must be transferred to Nevada.  Defendant's motion can be granted on that basis.

### B. Convenience and Fairness

The court now examines whether the proposed transfer is appropriate under § 1404(a). This analysis will turn on an individualized weighing of the convenience and fairness factors as it is undisputed these actions could have been brought in Nevada originally.[8]

---

here that all of the UFC's contracts with Fighters - and the exclusionary provisions therein - taken together form part of the UFC's anticompetitive scheme to impair actual or potential rivals and enhance its monopoly power . . . ."

[8] As the Complaints reveal, Defendant is a Nevada limited liability company headquartered in Las Vegas and is therefore subject to suit in that district. See 28 U.S.C. § 1391(b)(1), (2), (c)(2) (designating that a civil action may be brought in "a judicial district in which any defendant resides" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," and specifying that, for venue purposes, a corporation shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's

12

Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

Looking first at which forum is more convenient for the parties and relevant witnesses, it is apparent that Nevada is far more convenient for Defendant and its corporate witnesses since they are all based in Las Vegas and would need to travel to San Jose in order to participate in significant litigation events. The participation of these witnesses is critical to both sides. For their part, Plaintiffs have not convincingly shown that Nevada is any less convenient for them. Indeed, only three of the named plaintiffs actually reside in the Northern District of California. The other eleven named plaintiffs would face the need to travel even if this case was not transferred. Similarly, almost all of the other unspecified non-party witnesses referenced by Plaintiffs - those who have participated in various UFC events around the country - are equally inconvenienced by California and Nevada forums. Thus, this factor, considered the most important consideration of them all, weighs strongly in favor of the transfer since this district is not particularly convenient for a majority of those involved. See Amini Innovation Corp. v. JS Imps., Inc., 497 F. Supp. 2d 1093, 1111 (C.D. Cal. 2007) ("The convenience of witnesses is often the most important factor in determining whether a transfer pursuant to § 1404 is appropriate.").

The factors related to the parties' agreements also favor the transfer. Plaintiffs cannot dispute their contracts with Defendants state specifically that they were delivered and executed in Nevada. That same provision also requires the contracts be interpreted according to Nevada law, and while this court is certainly capable of applying the law of different states and does so routinely, the Nevada district court is better positioned to apply the law of the state in which it sits.

As to the factors focused on geography, the parties recognize that a plaintiff's choice of forum generally weighs against a defendant's desire to transfer the case elsewhere. But here, this factor must be afforded less deference for two reasons. As already noted, the majority of the named plaintiffs do not reside in this district, rendering their choice of forum less significant. See Park v. Dole Fresh Vegetables, Inc., 964 F. Supp. 2d 1088, 1094 (N.D. Cal. 2013). In addition,

---

personal jurisdiction.").

13

Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

and despite the attempt to create some strong connection to San Jose, Plaintiffs filed these purported class actions in a district where very few of the operative facts occurred. That being the case, this forum has little local interest in adjudicating Plaintiffs' claims. In contrast, the Nevada district court's interest in the issues raised by these cases is considerably strong since Defendant is headquartered there and conducts a substantial amount of business in the Las Vegas area. See Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). Thus, while Plaintiffs' choice of forum must be given some consideration, that factor is outweighed here by the significant connection these cases have to Las Vegas.

That leaves the factors relating to the litigation process. As to which forum is better suited for motions to compel, the court again emphasizes that most of the relevant witnesses reside in Nevada, rendering it the jurisdiction most likely to face proceedings directed at uncooperative witnesses. There is also some cost savings to both sides if these cases are litigated in Nevada. Park, 964 F. Supp. 2d at 1095 ("Generally, litigation costs are reduced when venue is located near the most witnesses expected to testify . . . ."). Furthermore, aside from electronically-stored documentary evidence that is equally accessible in both forums, most if not all of the other relevant sources of evidence and proof are in Nevada, not California. Accordingly, even assuming Plaintiffs are correct that the legal process in Nevada generally takes longer than it does in this district, that is simply not enough to overcome those other factors showing why this specific litigation is appropriately venued there.

In the end, this is not one of the situations where a contemplated transfer simply shifts inconvenience between parties. Here, transferring the actions to Nevada eliminates them from a forum that is not especially convenient for either side and sends them to the one that is especially suited to Plaintiffs' claims. On balance, the convenience and fairness considerations applicable to an analysis under § 1404(a) demonstrate that the Nevada district court is the most appropriate venue and provide another basis to grant Defendant's motion.

Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

## IV. ORDER

Based on the foregoing, Defendant's Motion to Transfer is GRANTED. The Clerk shall TRANSFER the above-captioned actions to the United States District Court for the District of Nevada, Las Vegas Division, and close this court's files.

All matters calendared before the undersigned are VACATED.

**IT IS SO ORDERED.**

Dated:  June 2, 2015



EDWARD J. DAVILA
United States District Judge

Case Nos.: 5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE